In the Matter of the Application of FRANK TEICHER, INC., Appellant, for an Order Discharging a Notice of Mechanic's Lien Filed by MAX GOLD, Respondent, in the Office of the Comptroller of the City of New York and the Department of Correction of the City of New York on the 19th day of September, 1932, under Contract No. 102511, in the Sum of $1,560. (Appeal No. 1.)

MAX GOLD, Respondent, *v.* FRANK TEICHER, INC., and Another. Appellants, Impleaded with CITY OF NEW YORK, Defendant, (Appeal No. 2.)

First Department, November 3, 1933.

*Hyman Grill,* for the appellants.

*David Rudin,* for the respondent.

MARTIN, J. The lienor, an engineer, was engaged by the contractor-appellant to prepare plans and supervise the construction of a building at No. 101 Centre street, Manhattan, pursuant to two agreements, dated October 7, 1931, and March 19, 1932, respectively. A lien was filed on September 17, 1932, within a month after the performance by the lienor of the last item of work. Thereafter the lienor sought to amend the notice of lien in a substantial manner. The amendment was allowed by the court. The amendment of the notice of lien permitted by the order appealed from sought primarily to include the due dates of the amounts claimed by the lienor. The contention of the respondent is that section 12-a of the Lien Law expressly permits such an amendment of a notice of lien.

Section 12-a of the Lien Law (as added by Laws of 1932, chap. 627) provides as follows: " In a proper case, the court may, upon five days' notice to existing lienors, mortgagees and owner, make an order amending a notice of lien upon a public or private improvement, *nunc pro tunc.* However, no amendment shall be granted to the prejudice of an existing lienor, mortgagee or purchaser in good faith, as the case may be."

The above section is limited, however, by section 11 of the amending act, as follows: " § 11. The provisions of the Lien Law as amended by this act shall not affect, impair or apply to mechanics' liens, building loan contracts, mortgages, assignments and orders referred to in section fifteen of the Lien Law, attachments or judgments, or to claims or liens acquired in any action or proceeding upon such mechanics' liens, building loan contracts, mortgages, assignments and orders, attachments and/or judgments filed, recorded, docketed, entered or obtained, or to contracts for the improvement of real property made, prior to the date when this act takes effect, but any act done or right accrued or acquired, or any liability, penalty, forfeiture or punishment incurred or imposed, or any limitation or demands accrued or established prior to the date when this act takes effect may be asserted, enforced, prosecuted or inflicted in the same manner and to the same extent as though this act had not been passed."

Section 14 of this act provides that this act shall take effect July 1, 1932.

The contracts which are the basis of the alleged lien as appears from the lien as amended were entered into October 7, 1931, and March 19, 1932, admittedly prior to July 1, 1932, the date of the

taking effect of chapter 627 of the Laws of 1932. In view of section 11 of that act, which expressly provides that the act shall have no effect upon contracts made prior to July 1, 1932, it must necessarily follow that the order granting the lienor's motion permitting him by virtue thereof, to amend his notice of lien, *nunc pro tunc*, should not have been granted. The amending act creating section 12-a of the Lien Law expressly provides that it shall have no retroactive effect upon contracts made prior to the date of its taking effect, to wit, July 1, 1932, consequently section 12-a cannot be availed of by the lienor. It is unnecessary to enter into a discussion whether the statute permitting the amendment of a lien is to be construed as having a prospective or retroactive effect, when the act expressly provides that it shall not affect contracts made prior to the date when it takes effect. There is no escape from the conclusion that the contracts which are the subject of the lien were made prior to July 1, 1932, and prior to the date when the amending act which gave birth to section 12-a of the Lien Law took effect. The fact that the lien was filed after July 1, 1932, or that some of the work was done thereafter, does not aid the lienor. The act expressly provides that the provisions of the Lien Law as amended by that act (and section 12-a is one of its provisions) shall not apply to contracts made prior to the date the act became a law.

It must be remembered that a mechanic's lien is the creature of statute. It springs into existence only when it is filed in accordance with the requirements of the statute, and if it is not so filed, it never comes into existence.

In *Mushlitt* v. *Silverman* (50 N. Y. 360) the court said: " The lien claimed by the plaintiffs is the creature of statute, and depends solely for its validity upon the act creating it. The act is an innovation upon the common law, affecting property and rights of property, authorizing, as it does, property to be encumbered without or against the consent of the owner, and without a resort to legal process or judicial action. Such an act cannot be extended, in its operation and effect, beyond the fair and reasonable import of the words used; and the plaintiffs, asserting their lien, must bring themselves within its terms, and the lien must be shown not only to have been regular and valid in its inception, but to be a continuing and existing lien under the statute. This they have failed to do."

Section 12-a being an enlargement of the common law is not to be construed as giving the court the power to construct a valid lien out of a defective notice. It may be construed to give the court the power only to amend the lien, and that presupposes the

existence of a valid lien. Here the lien was fatally defective. (*Bradley & Son* v. *Huber Co.*, 146 App. Div. 630; affd., 210 N. Y. 627.)

The Court of Appeals in *Toop* v. *Smith* (181 N. Y. 283, 289) said: " A mechanic's lien never comes into existence unless the notice upon which it is founded substantially complies with the statute which authorizes the creation of such liens. Even a court of equity has not the power to breathe the breath of life into a notice of lien that is insufficient under the statute, much less a court whose function it is not to administer equity, but to make the law as stable and certain as may be."

The last-mentioned case was cited favorably and followed in *Pascual* v. *Greenleaf Park Land Co.* (245 N. Y. 294, 299), and also in the recent case of *Brescia Construction Co., Inc.,* v. *Walart Construction Co., Inc.* (238 App. Div. 360, 365).

The notice of motion served by the lienor stated that it was served pursuant to section 12-a of the Lien Law and that the relief sought was in accordance with that section. The papers annexed to the notice conceded the fact that an amendment was necessary any relied upon the section in question as authority for such an amendment.

The lienor in the present case has not shown himself to be entitled to the benefits conferred by section 12-a of the Lien Law, and, therefore, his motion to amend his notice of lien, *nunc pro tunc*, should have been denied and the motion of the contractor-appellant for an order discharging the lienor's lien pursuant to subdivision 7 of section 21 of the Lien Law should have been granted.

The orders appealed from should be reversed, with twenty dollars costs and disbursements, the motion to discharge the lien filed by the lienor-respondent granted, and the motion to amend the notice of lien, *nunc pro tunc*, denied.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Orders reversed, with twenty dollars costs and disbursements, and motion to discharge the lien filed by the lienor-respondent granted, and motion to amend the notice of lien, *nunc pro tunc*, denied.